## DESGAIN v. WESSNER.

[No. 19,948.   Filed June 26, 1903.]

GAMING.—*Wrestling Match.—Money Lost.—Recovery.*—Money lost and paid by virtue of a bet or wager on a wrestling match may be recovered under §6676 Burns 1901.

From Blackford Circuit Court; *E. C. Vaughn*, Judge.

Action by Hector Desgain against Jesse D. Wessner to recover money bet on a wrestling match. From a judgment for defendant on demurrer to complaint, plaintiff appeals.   *Reversed.*

*A. M. Waltz* and *E. W. Secrest*, for appellant.
*J. A. Hindman* and *M. M. Powell*, for appellee.

GILLETT, J.—The question in this case is whether money lost and paid by virtue of a bet or wager on a wrestling match can be recovered under §6676 Burns 1901. That section is as follows: "If any person by betting on any game, or betting on the hands or sides of such as play at any game, shall lose to any one any money, or valuable thing, and shall pay or deliver the same, or any part thereof, the person so losing and paying, or delivering the same, may, within six months next following, recover the money or other valuable thing so lost and paid or delivered, or any part thereof, with costs of suit, by action founded on this act, to be prosecuted in any court having jurisdiction thereof." We take the following definition of the word "game" from the Century Dictionary: "A contest for success or superiority in a trial of chance, skill, or endurance, or any two or all three of these combined." It was said by Cooley, J., in *People* v. *Weithoff*, 51 Mich. 203, 16 N. W. 442, 47 Am. Rep. 557: "The word 'game' is very comprehensive, and embraces every contrivance or institution which has for its object to furnish sport, recreation or amusement.   Let a stake be laid upon the chances

of the game, and we have gaming." In 14 Am. & Eng. Ency. Law (2d ed.), 681, it is stated that "Where the statutes prohibit betting on any game, the word 'game' has a broad and comprehensive signification and includes any contest for superiority or success in any trial of chance, skill, endurance, or strength."

The statute in question is not penal, but is remedial in its character, and is, therefore, to be given a liberal construction to advance the remedy. We think, however, that the proposition that a wrestling match is a game within §6676, *supra,* is not an open one in this State. In a case that was decided by this court in the year 1846 the court said: "In the statutes and judicial decisions of England, a horse race is uniformly classed as a game (10 Petersdorff's Abr. 228; *Blaxton* v. *Pye,* 2 Wils. 309); and we think our legislature used the term in the same signification." *Cheesum* v. *State,* 8 Blackf. 332. It was after the above decision that §6676 of the statutes became a law.

It is not necessary that a statute should have been literally reënacted to authorize the presumption that it was reënacted in the light of the settled judicial construction that the prior enactment had received. The presumption has been indulged in case of a statute that applies a settled procedure to a new subject-matter (*Board, etc.,* v. *Conner,* 155 Ind. 484); and in *Interstate Commerce Commission* v. *Baltimore, etc., R. Co.,* 145 U. S. 263, 284, 36 L. Ed. 699, 12 Sup. Ct. 844, it was held that it should be presumed that congress, by the use of the words "undue preference," had in mind the construction given those words in a statute upon the same subject by the English courts. Caution must, of course, be observed in the application of the general doctrine to cases other than where there has been a literal reënactment of a statute. It is a matter in such an instance which calls for the exercise of a sound judicial discretion to determine, after a consideration of the subject-matter of the legislation, the

context of the enactments, cognate statutes, and the course of decision under the earlier law, whether the presumption that the later statute was enacted in the light of such judicial history shall be indulged or no.

The prior statute to which we have referred, which was construed in *Cheesum* v. *State, supra,* related to the competency of witnesses in gaming cases, so there is no room for the presumption that a change of language evinced a change of intention. The question is simply whether the legislature is to be presumed to have been familiar with the decision mentioned when it enacted the statute under consideration. This must be presumed, and therefore it follows that the construction of the statute must be solved against appellee.

But this is not the end of the argument against the position of the latter. In the case of *Wade* v. *Deming,* 9 Ind. 35, which involved the statute that we are now considering, it was held that a horse race was a game within said statute. In that case this court said: "The principal point in the case turns on the word 'game,' as used in the statute. It is insisted that a horse race is not a game, within the meaning of that act. 1 R. S., p. 305, §2. The idea of a 'game of horse race' is ridiculed, without a just appreciation, perhaps, of the purpose of all such enactments. It seems obvious that the same vicious principle runs through all bets, whether they be upon a horse race, or upon cards, or any other undetermined event. It is not the race or the play that the legislature is aiming at, but the betting for money or other valuables. In 3 Stark. 1, Abbot, C. J., says, games, whether of skill or of chance, are within the English statutes; and that it is the playing for money which makes them unlawful. If feats of skill are games within the statute, feats of strength or of speed must be equally games within the same statute. Aside from the awkward phraseology, and regarded on principle only, it is not easy to distinguish a game of horse race from a game of cards,

or a bet on the one from a bet on the other.    Both are clearly within the same mischief." The above language commends itself to the court as now constituted.

Judgment reversed, with a direction to the trial court to overrule the demurrer to the complaint.