### BALTIMORE TALKING BOARD CO., Inc., v. MILES, Internal Revenue Collector.

(Circuit Court of Appeals, Fourth Circuit. February 9, 1922.)

No. 1908.

I. Internal revenue ⊙=11—Ouija boards taxable as "games."

Ouija boards *held* "games," within the meaning of Revenue Act 1918 (Act Feb. 24, 1919, § 900 [Comp. St. Ann. Supp. 1919, § 6309⁴/₅a5]), imposing a tax of "games and parts of games," in view of the facts that they are sold generally through retail stores, are used generally as means of

⊙=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

amusement, that the Patent Office has granted a patent for the board as a game, and that they have been so classified by the internal revenue department.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Game.]

**2. Evidence ☞83(1)—Construction of statute by administrative officers presumed correct.**

The findings and practice of the administrative officers of the internal revenue department are presumed to be based on fair conclusions as the result of the investigation required of them by Rev. St. §§ 3165, 3172, as amended by Revenue Act 1918, § 1317 (Comp. St. Ann. Supp. 1919, §§ 5885, 5895).

Knapp, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action by the Baltimore Talking Board Company, Incorporated, against Joshua W. Miles, Collector of Internal Revenue. Judgment for defendant, and plaintiff brings error. Affirmed.

For opinion below, see 273 Fed. 531.

Certiorari denied, 257 U. S. ——, 42 Sup. Ct. 590, 66 L. Ed. ——.

Allan H. Fisher and Washington Bowie, Jr., both of Baltimore, Md. (Fisher & Fisher, of Baltimore, Md., on the brief), for plaintiff in error.

George W. Lindsay, Asst. U. S. Atty., of Baltimore, Md. (Robert R. Carman, U. S. Atty., of Baltimore, Md., Carl A. Mapes, Solicitor of Internal Revenue, and J. G. Korner, Jr., Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for defendant in error.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

WOODS, Circuit Judge. Joshua W. Miles, collector of internal revenue, collected from Baltimore Talking Board Company $202.81, 10 per cent. of its gross sales of Ouija boards. In this action to recover the amount as illegally exacted the District Court, trying the case by consent without a jury, held the plaintiff's Ouija boards to be "games" within the meaning of the following federal revenue statute, and found for the defendant:

Revenue Act 1918, tit. IX, § 900, subd. 5: "Tennis rackets, nets, racket covers and presses, skates, snow-shoes, skis, toboggans, canoe paddles and cushions, polo mallets, baseball bats, gloves, masks, protectors, shoes and uniforms, football helmets, harness and goals, basket-ball goals and uniforms, golf bags and clubs, lacrosse sticks, balls of all kinds, including baseballs, footballs, tennis, golf, lacrosse, billard and pool balls, fishing rods and reels, billiard and pool tables, chess and checker boards and pieces, dice, games and parts of games (except playing cards and children's toys and games), and all similar articles commonly and commercially known as sporting goods, 10 per centum." Comp. St. Ann. Supp. 1919, § 6309½a5.

Evidently the word "games," used in the statute, does not mean the games themselves, but the instrumentalities used in playing them. The following testimony of the secretary of the plaintiff corporation is the only description found in the record of the Ouija boards and their purposes and uses:

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"The witness further testified that the plaintiff made three different sizes; the tiniest one was called the 'wee' Ouija board. This board retails at 10 cents; its size is about 5x8 inches. The next size board retails from 50 cents to $1. It is sold to the dealer, and the dealer makes his own price, which varies between the amounts above. The size of that board is approximately 8x12 inches. The largest size Ouija board is 14x22 inches. The plaintiff made very few of that type of board. The witness further testified that the Ouija board is made entirely of cardboard and paper, and that there is nothing mysterious about it. He testified that the board contains the letters of the alphabet, the 10 numerals, and the words 'Yes' and 'No'; also that the little planchette is made of wood."

He further testified that sales were made chiefly to 5 and 10 cent stores, a few to department stores, but none to sporting goods stores; that plaintiff made no Ouija boards of wood and had no connection with William Fuld.

The defendant introduced without objection a patent granted William Fuld, June 19, 1915, for a Ouija board, which says:

"The object of the invention is to produce a game with which two or more persons can amuse themselves by asking questions and having them answered by the device used and operated by the touch of the hand, so that the answers are designated by the letters of the alphabet."

The defendant also introduced "certain envelopes, boxes, and boards," with the directions printed on the box or envelope setting out the well-known method of operating the board.

In its broadest sense a game is defined:

"A play or sport for amusement."

In its restricted and more generally applied sense it is:

"A contest for success or superiority in a trial of chance, skill, or endurance, or of any two or all three of these combined." Century Dictionary.

The definition of "Ouija" in the supplement to the New Century Dictionary is as follows:

"Formed as a trade-mark name, from F. oui, yes, and G. ja, yes. The name thus implies a thing that will answer 'yes' in any language. A good description of a well-managed planchette. A form of planchette, consisting of a board marked with the letters of the alphabet and the ten numerals and of the planchette proper, which (under the hand of the operator) moves over the board and touches certain letters and numerals and thus 'answers' questions."

The Popular Science Monthly, January, 1904, gives this description:

"The next higher grade of motor automotism, involving considerable subconscious action of the intelligence, is found in the various alphabet-using forms of amateur mediumship, such as table tipping, the 'Ouija board,' and certain other devices for making our muscles leaky and liable to escape from control."

It seems safe to say psychologists recognize the Ouija board as a real means of expression of automotism. The court knows in a general way that the Ouija board is seriously used by some persons in the belief that it affords mysterious spirit communication; by others as a means of personal observation of the control of muscular or nervous action by the subconscious or unconscious mind. But the court cannot pretend to be ignorant that it is very largely sold with the expecta-

tion that it is to be used merely as a means of social amusement or play, and is actually so used. It is true that automotism is the basis of this use, but phenomena of psychical as well as of physical nature may be the basis of amusement and games. In Gould v. Gould, 245 U. S. 151, 38 Sup. Ct. 53, 62 L. Ed. 211, the court says:

"In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the Government, and in favor of the citizen." Am. Net & Twine Co. v. Worthington, 141 U. S. 468, 12 Sup. Ct. 55, 35 L. Ed. 821; Benziger v. United States, 192 U. S. 38, 55, 24 Sup. Ct. 189, 48 L. Ed. 331; United States v. Isham, 17 Wall. 496, 504, 21 L. Ed. 728.

But the doubt as to the meaning of the statute must be one which remains after all recognized rules for ascertaining its meaning have been tried. As to the analogous rule requiring strict construction of statutes exempting property from taxation the Supreme Court has said:

"Its proper office is to help to solve ambiguities, not to compel an immediate surrender to them—to be an element in decision, and effective, maybe, when all other tests of meaning have been employed which experience has afforded, and which it is the duty of courts to consider when rights are claimed under a statute." Citizens' Bank v. Parker, 192 U. S. 73, 86, 24 Sup. Ct. 181, 186 (48 L. Ed. 346).

Doubt as to the meaning of a word is often removed by consideration of the legislative intent as shown by the entire statute. American Security Co. v. District of Columbia, 224 U. S. 491, 32 Sup. Ct. 553, 56 L. Ed. 856. Considering the comprehensive scheme of taxation which the statute was intended to provide its words should not be given a narrow meaning. The whole statute shows the intention to tax sales of all articles which were thought of and named and which could be embraced in words of general description known generally as luxuries: that is, articles not reasonably necessary to comfort according to the average standards of American life. Even when seriously used the Ouija board certainly comes within the general spirit and purpose of the statute.

On the whole the conclusion seems fair that the present chief purpose of the Ouija board is to supply amusement and diversion, and that it should be held to fall under the comprehensive term "games," within the meaning of the statute.

[2] The principle is also to be borne in mind in support of this conclusion that the findings and practice of the administrative officers of the government are presumed to be based on fair conclusions as the result of the investigation required of them by sections 3165 and 3172, Rev. St., as amended by the Revenue Statute of 1918 (Comp. St. Ann. Supp. 1919, §§ 5885, 5895). Edwards' Lessee v. Darby, 12 Wheat. 206, 212, 6 L. Ed. 603; Houghton v. Payne, 194 U. S. 88, 99, 24 Sup. Ct. 590, 48 L. Ed. 888; Komada v. United States, 215 U. S. 392, 396, 30 Sup. Ct. 136, 54 L. Ed. 249; Jacobs v. Prichard, 223 U. S. 200, 214, 32 Sup. Ct. 289, 56 L. Ed. 405.

In view of the comprehensive scope of the revenue act, the common knowledge that the Ouija board is so generally used as a means of

amusement, the fact that the Patent Office issued a patent describing it as a game, the presumption that the revenue officers correctly found it was so used after investigation, and the absence of any testimony to the contrary, we think the finding of the District Judge had adequate support in the testimony and therefore cannot be reversed by this court.

We are asked to hold on the mere appearance of a small Ouija board that it is a child's toy, and therefore comes within the exemption of the statute. The small board is like the large one in every respect except size, and there is not a particle of evidence that it is sold or used exclusively or mainly as a child's toy. The burden rested on the plaintiff to establish the differentiation by clear proof. Bank of Commerce v. Tennessee, 161 U. S. 146, 16 Sup. Ct. 456, 40 L. Ed. 645. We do not think the mere difference in size furnishes this proof.

Affirmed.

KNAPP, Circuit Judge (dissenting). I am not convinced that the Ouija board is a game, within the meaning of the Revenue Act or otherwise. The standard definition of the term, which reflects its common acceptation, namely, "A contest for success or superiority in a trial of chance, skill or endurance, or any two or all three of these combined," clearly does not include the device in question, since it has no relation to a contest of any sort. And if we take the term in its broadest sense, "A play or sport for amusement," we still have always the element or idea of winning, of success or superiority, of accomplishing a definite and desired result. In no substantial respect does the Ouija board answer this description. In short, it lacks the essential and ever-present characteristic of a game, under any accepted definition of the term.

The general clause of the section, "games and parts of games," must be construed, under the familiar doctrine of ejusdem generis, as embracing only articles of some similarity to those specifically mentioned. But the Ouija board has no real likeness in construction or use to any of the specified articles. It is unique, in a class by itself, plainly different and distinguishable from any of the enumerated games. If not strictly sui generis, it is more like the physical appliances used by those who pretend to predict the future. The crystal ball of a fortune teller or the paraphernalia of a magician could not properly be called a game. And quite obviously, as it seems to me, the other general phrase, "and all similar articles commonly and commercially known as sporting goods," cannot be held to include the Ouija board, because the proof shows that it is not commonly and commercially classed as sporting goods or sold in sporting goods houses. In other words, it is not known and designated by the trade generally as a game.

This being so, I do not see how we can escape the application of the ruling in Gould v. Gould, 245 U. S. 151, 38 Sup. Ct. 53, 62 L. Ed. 211, that statutes levying taxes are not to be extended by implication, and in case of doubt are to be construed most strongly in favor of the citizen. This ruling is recently repeated in United States v. Field, 255 U. S. 257, 262, 41 Sup. Ct. 256, 65 L. Ed. 617, in which, by the way, the Supreme Court reversed the administrative construction by the Treasury Department of the language there in dispute.

Conceding that this rule governs only when doubt as to the meaning of a statute remains, "after all recognized rules for ascertaining its meaning have been tried," I am not aware of any rule of construction which enables us to say that the Ouija board is a game. Surely doubt remains after every recognized test has been applied. And to hold that the Ouija board is included by implication, because "the whole statute shows the intention to tax sales of all articles thought of and named and which could be embraced in words of general description known generally as luxuries," appears to me simply to beg the question. It amounts to saying that the court will read the Ouija board into the section because the Congress might have put it there by specific mention, which would seem squarely against the doctrine of the Gould Case. Besides, in view of the peculiar character of the Ouija board and the serious use to which it is put by thousands of persons, it is by no means certain, if indeed it be probable, that the Congress would have included it by express mention if the matter had been brought to its attention. And this in turn brings us back to the Gould Case, with its explicit declaration that revenue statutes are to be construed most strongly against the government. I think the Ouija board should be held exempt.