## AMERICAN-LA FRANCE FIRE ENGINE CO., Inc., v. RIORDAN, Collector of Internal Revenue.

(District Court, W. D. New York. November 7, 1923.)

No. 1995.

1. **Internal revenue ⬉11—Motor fire engines and apparatus held subject to sales tax; "automobile truck;" "automobile wagon."**

   Motor trucks, though equipped with fire engines and fire-fighting apparatus, are included in the terms "automobile trucks" and "automobile wagons" in Act Oct. 3, 1917, § 600, (a), being Comp. St. 1918, § 6309¾a, and Revenue Act 1918, § 900 (Comp. St. Ann. Supp. 1919, § 6309⅘a), and the seller, though to a municipality, is subject to sales tax thereunder.

2. **Statutes ⬉206—All words and terms used must be given effect.**

   The words, phrases, and terms used by the legislative body must be given effect by the court in its endeavor to ascertain the intention of Congress in passing a statute.

3. **Statutes ⬉183—Not to be defeated by too strict construction.**

   Enactments of Congress are not to be defeated by adhering too strictly to the letter thereof.

4. **Statutes ⬉245—Tax statutes not to be extended by implication.**

   Provisions of tax-levying statutes are not to be extended by implication to include matters or articles not specially mentioned, and in case of doubt they are construed against the government and in favor of the citizen; but a doubt must be one which remains after all recognized means for ascertaining the meaning of the statute have been tried, and such doubt is often removed by consideration of the legislative intent as appearing by the entire statute.

5. **Internal revenue ⬉11—Sales tax not invalidated by fact that purchaser is municipality.**

   The excise sales tax imposed by Act Oct. 3, 1917, § 600 (Comp. St. 1918, § 6309¾a), is not a tax on the purchaser, and is not invalidated because the purchaser is a municipality.

6. **Internal revenue ⬉4—Erroneous construction of statute by Department does not create equities in favor of taxpayer.**

   While the construction of a tax statute by the executive authorities should not be lightly overturned, such construction does not create equities in favor of a taxpayer, which preclude a charge in the ruling by the Department or a different construction by a court.

At Law. Action by the American-La France Fire Engine Company, Inc., against Vincent H. Riordan, Collector of Internal Revenue. Judgment for defendant.

---

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Sackett, Chapman, Brown & Cross, of New York City (William P. Chapman, Jr., of New York City, of counsel), for plaintiff.

William J. Donovan, U. S. Atty., of Buffalo, N. Y. (Harold V. Cook, Asst. U. S. Atty., of Buffalo, N. Y., Carl A. Mapes, Solicitor of Internal Revenue, and Charles T. Hendler, Sp. Atty. of Internal Revenue, both of Washington, D. C., of counsel), for defendant.

HAZEL, District Judge. In this action the plaintiff, American-La France Fire Engine Company, Inc., asks to have refunded to it by the defendant, Collector of Internal Revenue Vincent H. Riordan, an excise tax of $30,578.17 (less tax of $222.49 on two sales), paid at different times in the years 1918 and 1919 under compulsion and protest. Section 3220, R. S. (Comp. St. § 5944). The taxes were assessed as manufacturers' sales taxes on automobile trucks to which fire-extinguishing appliances were for the most part permanently attached by plaintiff. The claim for refund was rejected by the Commissioner of Internal Revenue on the ground that the motor fire-fighting vehicles were taxable under the revenue acts as automobile trucks and automobile wagons. Plaintiff alleges in the complaint that the assessments were wrongfully, unjustly, and illegally made, in that its manufactured motor-driven apparatus were not included in the statute, and are therefore not subject to taxation. The evidence largely relates to structure and function of plaintiff's apparatus, and various facts have been stipulated by the parties. It is stated that this is a test case, and that a much larger amount is involved than the recovery sought herein.

[1] The first question is whether certain specified fire-fighting apparatus is included in the statute and classificaction; and, second, whether the products of plaintiff, sold to municipalities, were exempt from taxation. Section 600 (Comp. St. 1918, § 6309¾a) reads as follows:

"That there shall be levied, assessed, collected, and paid—(a) Upon all automobiles, automobile trucks, automobile wagons, and motorcycles, sold by the manufacturer, producer, or importer, a tax equivalent to three per centum of the price for which so sold."

Subsequently the Revenue Act of 1918, in effect February 24, 1919 (Comp. St. Ann. Supp. 1919, § 6309⅘a), was passed by Congress. It reads as follows:

"Sec. 900. That there shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold or leased—

"(1) Automobile trucks and automobile wagons (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), 3 per centum;

"(2) Other automobiles and motorcycles (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), except tractors, 5 per centum."

In these provisions Congress classified and referred to various kinds of motor vehicles which were subject to the tax. The apparatuses in question are embodiments of self-propelled vehicles designed to

traverse roads and streets at different speeds. It is necessary to determine on the issues, first, whether plaintiff's vehicles were taxable as automobile trucks and automobile wagons. The proofs are that some of the chassis used to carry the fire machinery were manufactured by plaintiff, others (Ford motor trucks) were purchased in the open market, and chassis of another manufacturer (Brockway Auto Trucks) were also utilized for attaching thereto fire-extinguishing appliances, pumps, chemical engines, ladders, etc. Hose and tools are carried to fires, together with eight to ten firemen, who stand on running boards of some of the motor vehicles.

The terms "automobile, automobile truck," were concededly interpreted by the Commissioner of Internal Revenue on January 12, 1918, to include any self-propelled vehicle, irrespective of the nature of its use, and that to fall within those terms it was essential that the vehicle or conveyance be used primarily for the transportation of persons or property other than the machine itself. By this interpretation motor fire engines and fire-fighting machines, if constructed to carry only such persons as were required to drive them, were excluded from the scope of the tax. Regulation No. 47 as amended (articles 11, 12, and 13), stating that the tax applied to automobile trucks, even though "persons may incidentally be transported at the same time," modified the previous rulings. Hook and ladder trucks, hose wagons, and squad cars were held taxable and taxes were paid thereon by plaintiff under protest, even though the sales were made to municipalities. It was afterwards ruled (regulation 44) that sales of motor fire engines and motor-transporting apparatus to states and political subdivisions were not taxable as automobiles, or as automobile trucks, and the taxes paid were refunded.

Fire engines designed to carry only such persons as are necessary to drive them were ruled not taxable, but those designed to carry firemen not particularly employed in driving the machine were taxable as automobiles. On October 7, 1919, article 11 was amended to hold fire engines nontaxable, if designed to carry only persons necessary to drive them and to operate the pumps; but if they were manufactured to carry firemen beyond the required number to operate the machine they were separately taxable as passenger-carrying automobiles. Automobile trucks, equipped as hook and ladder trucks and hose carts, were also held taxable. The uncertainty and indefiniteness of some, if not all, the various rulings by the Commissioner was finally laid at rest on July 22, 1919, by the promulgation of a revised regulation that motor fire engines and motor fire-fighting apparatus, hose carts, hook and ladder trucks, water tower trucks, etc., were subject to taxation as automobile trucks and automobile wagons, regardless of sales to municipalities.

It is strongly urged by plaintiff on the first point that this was an erroneous ruling, since the fire engines and fire apparatuses were not primarily designed to carry either persons or property; their construction plainly showing that their sole object and purpose was to function as machines in extinguishing fire. It is argued that, if Congress had intended to include self-propelling fire engines and other

motor-driven fire machines, it would, in view of the history of such machines and apparatuses, have embodied a particular description of the objects to be taxed, or used a term or phrase of wider scope than is to be imputed to any generic designation, and, having failed to do so, the inference is justifiable that fire-fighting engines and apparatus were not intended to be taxable. The argument, however, disregards, as it seems to me, the similitude that modern fire engines and self-propelled apparatus for conveying hose, hook and ladders, firemen, etc., to a fire bears to the general terms selected by Congress for the imposition of the tax upon all vehicles of that particular class.

[2, 3] It is a familiar rule of statutory construction that the words, phrases, and terms used by the legislative body must always be given effect by the court in its endeavor to ascertain and determine the intention of Congress in passing a statute. Its enactments are never to be defeated by adhering too strictly to the letter thereof. Oates v. Nat. Bank, 100 U. S. 244, 25 L. Ed. 580; 2 Lewis' Sutherland on Statutory Construction (2d Ed.) § 363. And when the revenue act of 1917 was passed Congress saw fit to use the words "all automobiles, automobile trucks," fixing a tax of 3 per cent.; but in 1918 it specifically included automobile trucks and automobile wagons in fixing the tax at 3 per cent., tending to show that automobile wagons not previously included were then being sold. The classifying words "other automobiles," in fixing a higher rate, were used to include all forms and types of passenger-carrying motor vehicles, and hence the term "automobile" is employed, in my opinion, in a broad sense, and with a view of including all self-propelled vehicles that ordinarily by common speech come within the category of automobiles, automobile trucks, and automobile wagons.

[4] It is a uniform rule of interpretation of tax-levying statutes not to extend their provisions by implication or to enlarge their scope, with a view of including matters or articles not specifically mentioned, and in case of doubt they are construed against the government and in favor of the citizen. Gould v. Gould, 245 U. S. 151, 38 Sup. Ct. 53, 62 L. Ed. 211. But as said in Baltimore Talking Board Co. v. Miles (C. C. A.) 280 Fed. 661, a doubt as to the meaning of a statute must be one which remains after all recognized rules for ascertaining its meaning have been tried, and such a doubt is often removed by consideration of the legislative intent as appearing by the entire statute. A narrow meaning of a word is rarely given a revenue statute, and the adjudications uniformly hold that words of general description often embrace an unnamed article, or one that was not thought of by the enacting power at the time the act was passed.

The characteristics of an automobile vehicle are not materially altered by fixing to the chassis or frame devices or machinery of one kind or another that may make or tend to make the completed vehicle useful for a special purpose. It makes no difference that the chassis is specially designed or enlarged, or made adaptable for riveting pumps, retaining hooks for ladders and axes, the fire extinguisher, and running board for use of the firemen, or that the motors are constructed for greater speed than automobiles or other self-propelled

vehicles. The ordinary meaning of the term "automobile" in its early stages was, I believe, restricted to self-propelled vehicles used for the transportation of passengers, as testified by Prof. Krapp; but I think Congress, in fixing the excise taxes applicable to self-propelled vehicles, used the terms "automobile," "automobile wagon," and "automobile truck," in a broader sense, and intended to include all power vehicles generally that were ordinarily used for transportation on streets and roads. It was a war measure, to increase revenue for required governmental purposes, and hence technical or illiberal construction should be avoided. Indeed, freedom from taxation should not "be assumed, unless the language used is too clear to admit of doubt." Vicksburg R. Co. v. Dennis, 116 U. S. 668, 6 Sup. Ct. 625, 29 L. Ed. 770.

It must be conceded that motor-driven fire apparatus, at the time the tax was imposed, was in a formative stage, and there existed perplexity as to the exact meaning of the terms used and their applicability. In Webster's International Dictionary the noun "automobile" is defined, "An automobile vehicle or mechanism; a specially self-propelled vehicle suitable for use on the street or roadway;" while the adjective is defined as containing "means of propulsion within itself, self-propelling, as an automobile, torpedo, or car." These definitions, and others found in the briefs, lead to the conclusion that the omission to mention motor vehicles used for conveying fire apparatus was not intentional, but, on the contrary, the language used, in its entirety, contemplated their inclusion.

In the act of 1918, establishing a tax at different rates, there is contained the exception of tractors—an exception following the words "other automobiles and motorcycles," from which the point is contended that, if Congress intended to exempt self-propelled fire vehicles, it would undoubtedly have made a similar exception. The point has significant merit. The terms "automobile," "motor vehicle," "motor car," are often used synonomously with each other. 2 Ruling Case Law, p. 1167; Bethlehem Motor Corp. v. Flynt, 178 N. C. 399, 100 S. E. 693. And in this view it cannot be doubted that plaintiff's productions, motor trucks and carts, with its different fire-fighting parts, clearly constituted automobile trucks, for by that term is implied and ordinarily understood every description of conveyance for the transportation of either person or property on land, with perhaps the single exception of the street car. Balthasar v. Pacific El. Ry. Co., 187 Cal. 302, 202 Pac. 37, 19 A. L. R. 452.

Plaintiff's point, that its vehicles or machines were not primarily intended for transporting persons or property or things, and hence are not included in the classification of section 900, or any of the definitions of the words "automobile" and "automobile truck," is not in my opinion sustained, since firemen and drivers and loads of course were intended to be carried to and from fires. To argue that their transportation was merely incidental to the operation of the machines or the extinguishing of fires is beside the point, if the view taken is correct that Congress used broad and comprehensive terms in which plaintiff's productions are fairly included.

[5] The next contention arises from the sales of fire trucks and apparatus to municipalities. It is perfectly true that the federal government cannot burden the state or subdivision thereof to which automobile trucks, etc., were sold by plaintiff, by imposing taxes upon them, although there is no express provision of the Constitution prohibiting it. The well-established exception of states and their subdivisions from tax by the federal government is implied from our dual system of government, and the principle that the national and state governments must function separately, and separately maintain instrumentalities for conducting their governmental operations, and accordingly the states and municipalities cannot be hampered or impaired in administering their own affairs by the taxing power of the national Congress. The tax in the present instance, however, was not a direct tax on the municipalities to which articles were sold, nor on the articles acquired. The tax imposed on plaintiff was for the privilege of vending and dealing in the manufactured articles. Section 602 (Comp. St. 1918, § 6309¾c). There was no connection as agent or otherwise between plaintiff and the municipalities. It does not relieve plaintiff that sales to municipalities were under contract. This principle of taxation on sales finds support by analogy in various cases decided by the Supreme Court of which U. S. v. Perkins, 163 U. S. 625, 16 Sup. Ct. 1073, 41 L. Ed. 287, Snyder v. Bettman, 190 U. S. 249, 23 Sup. Ct. 803, 47 L. Ed. 1035, and South Carolina v. U. S., 199 U. S. 437, 26 Sup. Ct. 110, 50 L. Ed. 261, 4 Ann. Cas. 737, are believed fair examples. The first two cases related to taxation of bequests to the United States and to states and municipalities. The court held that the taxes imposed were upon the right to acquire property by succession or will and not upon the property of the state or municipality. In the South Carolina case certain persons, as agents of the state, were selling intoxicating liquor, and the court held that the salesmen were not relieved from paying the internal revenue tax, even though they had no interest in the profits, since the tax was not upon the property of the state, but upon the means by which that property was acquired. By a parity of reasoning the municipalities which bought fire vehicles are not in fact required to pay the tax, and hence the liability therefor is upon the manufacturer or salesman.

[6] It is next urged that the earlier ruling by the Commissioner that the excise tax did not apply shows a persuasive uncertainty as to the inclusion of plaintiff's structures. In answer to this contention, it must suffice to say that the erroneous interpretation of the statute by the Commissioner did not conclude the United States or the defendant from the right to impose and collect the tax on subsequent modification of the earlier rule. Nor has the later interpretation created equities which in fairness require the judicial adoption of the first interpretation. The tax is prescribed by statute, and, under section 601 of the Revenue Act of 1917 (Comp. St. 1918, § 6309¾b), no assessment was required; but monthly returns were necessary under oath by each manufacturer or producer, and payment of the tax apparently became self-executing. Dollar Savings Bank v. U. S., 19 Wall. 227, 22 L. Ed. 80; Christie-Street Com. Co. v. U. S. (C. C.)

129 Fed. 506. It is true that a construction by an executive department upon an act of Congress ought not to be lightly overturned, either by the department itself or by the court. Edwards v. Wabash R. Co. (C. C. A.) 264 Fed. 610. And it should not be done without cogent and persuasive reasons.

In the present case careful consideration has been given to the various questions involved; but in view of the conditions prevailing at the time the statute was passed, the emergency of war, and what seems to me to have been the evident intention of Congress to impose an excise tax on all kinds of automobiles and automobile trucks and wagons, in which, without express exception, plaintiff's productions are included, I am constrained to the view that the ruling in favor of imposing the tax was correct, and the original rulings were erroneous. The exception of tractors in the enactment adds force to the view that the intention of Congress is clearly expressed in the general language employed in both acts. A case of long-continued executive construction and payment of tax thereunder, and adoption by Congress in consequence thereof, is not presented, and hence the adjudications cited by plaintiff on that point are not controlling.

My conclusion is that the excise taxes paid by the plaintiff under sections 600 and 900 of the Revenue Acts were legally exacted. A decree may be entered dismissing the bill, with costs.