## MILLS NOVELTY CO. v. UNITED STATES.
### No. J–599.

Court of Claims.
June 1, 1931.

WILLIAMS, Judge, dissenting.

Dwight P. Green, of Chicago, Ill. (Willis D. Nance, A. Leslie Hodson, and Kirkland, Fleming, Green & Martin, all of Chicago, Ill., on the brief), for plaintiff.

Joseph H. Sheppard, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, WHALEY, LITTLETON, and WILLIAMS, Judges.

GREEN, Judge.

Plaintiff brings this suit to recover $92,-423.36 alleged to have been wrongfully assessed against it by reason of the manufacture and sale of certain coin-operated machines.

It appears that the Commissioner of Internal Revenue held that the machines were taxable as "games" within the meaning of section 900, subdivision (5), of the Revenue

Act of 1918 (40 Stat. 1122),[1] and the case turns upon the construction of this provision which, in enumerating the articles taxable, includes a long list of articles used in sports and games, and separately as part of the taxable articles, "games and parts of games."

The machines involved in the case were operated by placing a coin in a slot, and were so designed that the operators thereby obtained a chance as against the owner of the machine of winning or losing through the operation. The details of how this was accomplished are not material in deciding the case, and we have not considered it necessary to set them out very fully in the findings. These machines did not vend any merchandise, and were sold to persons who placed them in stores, restaurants, and other public places to be used by the public. They were not sold to stores and establishments which specialized in the sale of sporting goods, and were not commonly or commercially regarded as sporting goods.

It is contended on behalf of plaintiff that the machines in question were not "games or parts of games," and are not made taxable by the statute. This renders it necessary to determine the meaning and construction of these words as used in the law.

At the outset it may be said that, these words being preceded by a long list of articles used in various sports and games, the connection shows that the tax was intended to be levied, not upon the act of playing the game, but upon the articles used in playing it. The word "games" in its commercial sense means the article, articles, or apparatus used in playing games. Thus stores often advertise for sale "games of all kinds," referring to such articles. The connection also shows very plainly that Congress used the words "games and parts of games" as a sort of "catch-all" or "basket clause," that is, it was intended to catch and bring within the revenue net all kinds of articles used in playing games whether they were included in the list

that preceded or not. With this in mind, we will next consider whether the word "games" was intended to apply to the particular kind of machines which were in this case subjected to the tax.

At the outset it should be observed that these machines were a gambling device, and we do not understand that this is controverted by the plaintiff. The results obtained by the operators of the machine depended entirely upon chance; the operator being unable to influence or determine the outcome. The question therefore is ultimately whether a person that uses a gambling device of this kind in which he stakes the coin which he places in the machine against what chance may determine he will receive in return, if anything, is playing a game. It is obvious that the results are the same as they would be if the owner set in motion the machine upon receiving the coin. If, instead of this automatic machine, the owner had had one of those gambling devices in which a wheel is used which revolves when set in motion by the owner, and by chance stops at a certain point, we think no one would contend that a game was not being played. We do not think it makes any difference under the law whether the one that takes the other side of the wager constructs a machine that will operate in his absence or operates it personally. Clearly the effect is the same.

In Desgain v. Wessner, 161 Ind. 205, 67 N. E. 991, 992, a wrestling match was held to be a game, and the court quoted with approval from People v. Weithoff, 51 Mich. 203, 16 N. W. 442, 47 Am. Rep. 557, a definition of the word "game" as follows:

"The word 'game' is very comprehensive, and embraces every contrivance or institution which has for its object to furnish sport, recreation, or amusement. Let a stake be laid upon the chances of the game, and we have gaming."

So a horse race has been also held to be a game, and colloquially we have the expression in relation thereto of "playing the races." In the case last named pool tickets were sold on baseball games, and this was held to be gaming, as money was put at stake on the chances of the games, although neither the buyers of pool tickets nor those who sold them took any part in the ball games. In the instant case the operator staked money on the result of the operation of the machine. The machine was supplied with money by the owner, and, if the operator was fortunate enough to have its revolutions result in his favor, money of the owner was

[1] Sec. 900. That there shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold or leased— * * *
(5) Tennis rackets, nets, racket covers and presses, skates, snowshoes, skis, toboggans, canoe paddles and cushions, polo mallets, baseball bats, gloves, masks, protectors, shoes and uniforms, football helmets, harness and goals, basket-ball goals and uniforms, golf bags and clubs, lacrosse sticks, balls of all kinds, including baseballs, footballs, tennis, golf, lacrosse, billiard and pool balls, fishing rods and reels, billiard and pool tables, chess and checker boards and pieces, dice, games and parts of games (except playing cards and children's toys and games), and all similar articles commonly or commercially known as sporting goods, 10 per centum.

released and dropped into a receptacle where the party playing the machine could take it; otherwise the operator lost the coin which he had put in the machine. In operating the machine the user simply put up his money at long odds against the money of the owner of the machine. If we consider the shorter definition of the word "game" given in Webster—namely, a sport or diversion—we think it quite clear that those who operated the machines did so merely as a diversion. It is common knowledge that an element of chance has an attraction for many people who find a diversion in taking chances.

Counsel for plaintiff cite many cases with reference to the construction of the statute, none of which seem to us to be applicable. Courts have always held that, where some apparatus is used for gambling purposes, so that one party may stake his money against that of another, a game is played and gaming carried on, and the fact that the owner of the machine was not present to lay down his wager in person seems to us to be immaterial. We have already shown that the word "games," as used in the statutes, referred not to the contests but to the articles used in carrying them on.

Counsel for plaintiff base part of their argument on the fact that section 900, subdivision (16), 40 Stat. 1122, imposes a tax upon "automatic slot-device vending machines * * * and * * * weighing machines." Obviously plaintiff's machines belong to neither class, and it is contended that, as two types of automatic slot-device machines are specified in subdivision (16) as subject to taxation, all other types of such machines are excluded. We do not think this follows where the machines under consideration, as in this case, are constructed for an altogether different purpose and upon an altogether different plan, and, if taxed, are taxed upon an altogether different theory. Subdivision (16) imposes a tax upon the sale of a machine constructed for the purpose of automatically vending merchandise or ascertaining weight, and to the operation of which the element of chance does not enter. The machines under consideration in the case at bar are so completely different as to belong, as we think, to an entirely different classification, although also operated by a coin in a slot.

It is also argued on behalf of plaintiff that the fact that the machines in question were not commonly or commercially regarded as sporting goods shows that the statute does not apply, but the provision in the statute with reference to sporting goods is in addition to the list preceding it, which included games and parts of games, and which obviously was inserted, not for the purpose of defining the meaning of the list that had preceded, but to make subject to the tax articles which might not be included in the language previously used, such as some kinds of fishing tackle, boxing gloves, etc. It is immaterial that stores that specialize in sporting goods do not advertise or carry such machines as are involved in this suit. Naturally the owners thereof who desired to carry on a strictly legitimate business would have nothing to do with a machine constructed solely for gambling purposes.

In our opinion, the gambling machines involved in the case were articles or apparatus used in playing a game as the word is used in the statute, and, if we are correct in this, it follows that the plaintiff was subject to the tax in controversy. It is accordingly ordered that plaintiff's petition be dismissed.

LITTLETON, Judge (concurring).

It appears that slot machines operated and intended to be operated entirely as a game of chance were intended to be included in the articles taxed under paragraph 5 of section 900 of the 1918 Revenue Act (40 Stat. 1122), when it is noticed that in paragraph 16 of the section slot-device vending machines and slot-device weighing machines are specifically taxed by name, the vending machines being taxed at 5 per cent. and the weighing machines at 10 per cent.

The slot machines of chance serve no useful commercial purpose, and did no more than to provide for those so minded a means to play a game of chance, to take a gamble of losing all, or winning more than was staked on the chance. The fair inference is that Congress intended all slot machines to be taxed, but did not mention them along with slot-vending machines and slot-weighing machines, since under the term "games" in paragraph 5 of section 900 they were to be taxed at 10 per cent. The use of the slot machine in question was manifestly a game within the broad meaning of that term, and I think Congress used the words "games and parts of games" in their broad sense, and intended to include in paragraph 5 all of those articles, such as this, commonly used for the purpose of sport, pastime, or gambling.

In this case we are not concerned with the question whether the slot machine here involved was included under the general concluding clause of section 900, "and all similar

articles commonly or commercially known as sporting goods," since the slot machine in question is taxable under the specific classification of "games and parts of games." The general provision just referred to does not limit the classification of all which precedes it, but limits the articles that may be taxed under it in addition to those articles previously classified in the paragraph which are commonly and commercially known as sporting goods. In other words, the term "commonly or commercially known as sporting goods" would limit articles to be taxed under it, which had not been previously specifically designated, to those generally known as "sporting goods," but it does not exclude from taxation an article which clearly comes within a specific classification previously made in this section.

The conclusion that this slot machine was taxable under paragraph 5 of section 900 is strengthened by the fact that in the Revenue Act of 1924, after the tax on the articles specified in paragraph 5 of section 900 of the Revenue Act of 1918 had been repealed, the slot machine with which we are here concerned was included and taxed under subdivision 8 of section 600 (26 USCA § 881 note), along with coin-operated vending and weighing machines. In conference report No. 844, 68th Congress, 1st session, on the revenue bill of 1924, it was stated by the managers on the part of the House, on page 28, with reference to Senate amendment 187 to section 600 as follows: "The House bill imposed a tax upon the sale of automatic slot-device vending machines of 5 per cent, and a tax of 10 per cent upon the sale of automatic slot-device weighing machines. The Senate amendment strikes out this provision and inserts a tax of 10 per cent upon coin-operated devices, coin-operated machines, and devices and machines operated by any substitute for a coin, and also a tax of 10 per cent on mah-jongg and similar tile sets and component parts thereof. The House recedes with an amendment making the rate of tax 5 per cent upon the coin-operated devices," etc. In other words, when it was observed that by repeal of the tax imposed by section 900 (5) of the Revenue Act of 1918 on games the slot machines with which we are here concerned were not taxed, the Congress proceeded to tax them along with slot-device vending and weighing machines.

WILLIAMS, Judge (dissenting).

The taxes in controversy were imposed under section 900 (5) of the Revenue Act of 1918 (40 Stat. 1122). Forty-two articles are enumerated in the statute as subject to the tax, thirty-one of which are paraphernalia used in outdoor sports or games, and eleven of which are used in indoor sports or games. All the enumerated articles are used in sports or games involving human skill, ability, endurance, and competition. Following the enumeration of specific articles subject to the tax is the generalizing phrase "games and parts of games (except playing cards and children's toys and games) and all similar articles commonly or commercially known as sporting goods."

Slot machines are not among the articles enumerated in the statute, but the defendant contends, and the prevailing opinion holds, they are taxable under the general phrase "games and parts of games." It is said they are admittedly gambling devices, and as such are included within the meaning of the phrase "games and parts of games."

It is a familiar and universally accepted rule of statutory construction that, where an enumeration of specific things is followed by some more general word or phrase, such word or phrase is held to refer only to things of the same kind. United States v. Phez Co. (C. C. A.) 28 F.(2d) 106; United States v. Nichols, 186 U. S. 298, 22 S. Ct. 918, 46 L. Ed. 1173; United States v. Chase, 135 U. S. 255, 10 S. Ct. 756, 34 L. Ed. 117; Monroe Cidar Vinegar & Fruit Co. v. Riordan (C. C. A.) 280 F. 624.

The phrase "games and parts of games" is immediately preceded by an enumeration of specific articles, every one of which is used in well-known sports and games. There is not the slightest similarity between the plaintiff's slot machine and any one of the articles enumerated. A slot machine is a gambling device pure and simple, and can be used for no other purpose. This is not true of any of the other articles named, all of which are used either in outdoor athletic sports and contests or in social games such as are found in homes or clubs. None of the articles in the preceding enumeration are used in "games" as that term is defined in statutes directed against gaming and gambling. No one thinks of tennis rackets, skates, snowshoes, golf clubs and balls, chess and checker boards and pieces, or of any of the articles named as being gambling devices, and by no stretch of imagination can a slot machine, such as we are dealing with here, be considered as being of the same class or kind of article as any of those specifically enumerated.

Applying the rule ejusdem generis, the generalizing phrase "games and parts of games," following an enumeration of specific articles, can include only within its meaning like articles to those enumerated. Conceding that the plaintiff's slot machines are "games" within the meaning of statutes directed against gambling, as contended by defendant, they are, under the rule, entirely outside the limitations imposed by the enumerated articles on the general phrase "games and parts of games," and are not subject to the tax.

Another familiar rule of construction is that the meaning of a doubtful word or phrase appearing in a statute may be ascertained by reference to the associated words, those following as well as those which precede such word or phrase. United States v. Louisville & Nashville R. Co., 236 U. S. 318, 35 S. Ct. 363, 59 L. Ed. 598; Virginia v. Tennessee, 148 U. S. 503, 13 S. Ct. 728, 37 L. Ed. 537; Patton v. United States, 159 U. S. 500, 16 S. Ct. 89, 40 L. Ed. 233.

The phrase "games and parts of games" is immediately followed by "except playing cards and children's toys and games, and all similar articles commonly or commercially known as sporting goods." These words are explanatory of the intent and purpose of section 900 (5) to impose the tax only on such articles as are commonly or commercially known as sporting goods. In fact, this section of the Revenue Act of 1918 has been commonly known as the sporting goods section of the act. The articles made subject to the tax are referred to as "sporting goods" in the report (No. 767, p. 34) of the Ways and Means Committee of the House and in the report of the Senate Finance Committee (No. 617, p. 54) in connection with the consideration of the act by Congress at the time of its passage. The Committee on Finance of the Senate, in reporting the Revenue Act of 1921, said in reference to the change made in section 900 (5) of the Revenue Act of 1918 (S. Report No. 275, p. 28): "* * * The reduction of the tax imposed by subdivision 5 upon sporting goods from 10 to 5 per cent."

The Treasury Department in article 18 of Regulations 47, revised, enumerates nearly two hundred different articles as being subject to the tax imposed by section 900 (5) of the 1918 Revenue Act. All of the articles enumerated are such as are commonly used in athletic sports, and are of a like kind to those specifically named in the act. None of the articles so enumerated are in any respect similar to the slot machines in question, and none of them are articles used in "games," as that term is used in criminal statutes against gambling. It is quite clear from the regulations that the Treasury Department interpreted section 900 (5) as making sporting goods and nothing else subject to the tax. I think this interpretation of the law is correct. The phrase "games and parts of games" must be construed in connection with the phrase which follows, "and all similar articles commonly or commercially known as sporting goods." No article other than those specifically enumerated in the act is subject to the tax, unless such article is of a similar kind to those named, and is one commonly and commercially known as "sporting goods."

The commissioner of the court to whom the instant case was referred to take the proof and report the facts included in his report the following:

"During the period involved herein coin-operated machines of the several types hereinabove referred to were not sold at representative stores and establishments which specialized in the sale of sporting goods, and they were not commonly or commercially regarded as sporting goods."

The defendant filed no exceptions to this statement of fact. It is fully sustained by proof, is material to the issue presented, and I think should be incorporated in the court's findings of fact.

It is my opinion that the Commissioner of Internal Revenue was without authority under the statute and the applicable regulations to impose and collect the taxes in question, and that the plaintiff should be given a judgment for the amount of such taxes, with interest thereon.