KERNER, Circuit Judge.
The sole question on this appeal is whether the manufacturer’s excise tax on sporting goods, imposed by Section 609 of the Revenue Act of 1932, is applicable to bowling alleys. 47 Stat. 264, 26 U.S.C.A. Int. Rev.Acts page 612.[1] The tax was assessed against plaintiff (The BrunswickBalke-Collender Company), the assessment was paid under protest, and the claim for refund was-rejected. Thereafter the plaintiff brought this action to recover the amount paid under protest, the District Court found and held for plaintiff, and the defendant (Collector of Internal Revenue) appealed from the judgment rendered.
The tax on sporting goods had its origin in the Revenue Act of 1917. 40 Stat. 316. [2] The legislative committees referred .to this war tax as one on “athletic and sporting goods, including games,” or on “articles used in certain amusement games.” House Report No. 45, Ways and Means Committee; Senate Report No. 103, Finance Committee; 1939 — 1 Cum.Bull. (Part 2), pp. 53, 63. The tax on sporting goods was retained in the Revenue Act of 1918. 40 Stat. 1122. [3] See, also, 1939 — 1 Cum.Bull. (Part 2), pp. 110, 129. It is to be noted that bowling alleys were not assessed for taxation under the 1917 and 1918 statutes. Then in 1921 Congress repealed the tax on sporting goods. 42 Stat. 320. In 1932 Congress revived this tax. 47 Stat. 259, 264, 267. See footnote 1. See, also, House Report No. 708, Ways and Means Committee; Senate Report No. 665, Finance Committee; 1939 — 1 Cum.Bull. (Part 2), pp. 463, 481, 483, 497, 504, 528, 547. In June of 1932 a representative of the Bureau of Internal Revenue advised plaintiff that bowling alleys were not subject to the tax on spotting goods. On October 3, 1932, the Commissioner of Internal Revenue wrote a letter to a manufacturer-taxpayer which contained the following statement: “You are advised that bowling alleys * * * are not taxable * * * [but] that bowling pins and balls are properly taxable under section 609 of the Revenue Act of 1932.” In January of 1933 the Commis *788 sioner of Internal Revénue notified plaintiff of the change in its ruling on this point.
The evidence shows that bowling alleys are constructed and installed according to contract and in the manner related below. Under normal construction plaintiff’s customer supplies the floor and foundation, and plaintiff secures the alleys thereto. Most of the component parts of the alley are shipped from plaintiff’s factory. For instance the gutters and returns are milled, tongued and grooved at the factory. These parts arrive at the place of installation and are there assembled and set into place by plaintiff’s special mechanics. Other parts of the alley consist of common lumber which is obtained locally, cut to length and ■fitted by the special mechanics. After completion the alley is sanded and then shellacked. Each alley extends a distance of 84 feet from the start of the runway to the back of the pit, and the wood material used in the installation thereof weighs between 6,000 and 7,000 pounds. If it becomes necessary to remove an alley, the screws are unscrewed, the nails are pulled out, and the component wood parts are taken out piece by piece in reverse order. Sev.enty-five percent of the material thus removed, may be re-used. In the South some alleys are made of concrete and obviously these can not be removed and reused except by breaking up, grinding and pulverizing the concrete. Ordinarily the business transaction between plaintiff and its customer assumes the legal form of a conditional sale or chattel mortgage.
The opinion evidence disclosed that in the “bowling alley” business or trade, bowling is considered as a game of skill and as a luxury. This evidence further indicated that a bowling alley is a part of the game of bowling or an instrumentality used in the playing of the game, in that the alley is necessary in order to play the game of bowling. . On this point the evidence is clear that a bowling alley is a place on which the game is played in the same sense that a handball court is a place where the game of handball is played, that a baseball field is a place on which baseball is played, or that a tennis court is a place on which tennis is played. There is a conflict in the opinion evidence as to whether in the trade a bowling alley is commonly or commercially known as sporting goods. In this regard the evidence is undisputed that bowling alleys are never carried by sporting goods stores as a part of their merchandise or as stock in trade, nor are they sold by sporting goods stores. Furthermore it appears that a bowling alley does not exist unless installed and fastened to the premises. There is also a conflict in the opinion evidence as to whether in the trade a bowling alley is considered manufactured and sold when installed on the customer’s premises. On this point, in addition, to what has already been said, there is oral testimony that in its catalogs plaintiff advertises that it sells, manufactures and installs bowling alleys.
The District Court found that “A bowling alley is neither a game nor a part of a game. It is neither commonly nor commercially known as sporting goods.” It is obvious that the record supports the fact finder. We would so conclude even if we had weighed the evidence de novo. The District Court also found that “It [a bowling alley] is neither similar nor closely associated with any article particularly named in Section 609 of the Revenue Act of 1932, and it is not used in any game the same as any article particularly named in said Section is used.” We agree with the fact finder’s statement and conclude that its basis in the evidence is reasonable and plain. It follows that we also approve the District Court’s conclusion of law that bowling alleys are not taxable under Section 609 of -the Revenue Act of 1932.
We are impressed with plaintiff’s argument that the terms of the statute are inconsistent with any contention that it was intended to cover bowling alleys. It is manifest that a bowling alley has no real likeness either in construction or in use to any of the articles specified in the statute. If not in a class by itself, a bowling alley is more like a handball court, skating rink, basketball floor or baseball diamond. It is plain that these instrumentalities are different and distinguishable from the merchandise named in the statute. We think it material that the statute taxes basketballs, basketball goals and basketball uniforms, yet fails to mention basketball floors; that it taxes skis and toboggans, yet fails to mention ski jumps and toboggan slides; and that it taxes skates, yet fails to mention skating rinks. It is obvious that the legislators never intended to apply the tax on sporting goods to bowling alleys. We believe our conclusion in this regard is aided by the legislative history of the ■tax and by its prior administrative enforce *789 ment, a story which has been related earlier in the opinion.
We are satisfied that bowling alleys are not similar to the articles named in the statute or to articles commonly or commercially known as sporting goods. It is not sound to contend otherwise in view of the evidence adduced in this case. There is some case-law relating to the tax statute in question. This case-law we have considered and we are certain that it is consistent with the conclusion reached here. See White v. Aronson, 302 U.S. 16, 58 S.Ct. 95, 82 L.Ed. 20; Baltimore Talking Board Co. v. Miles, 4 Cir., 280 F. 658; Samuel Winslow Skate Mfg. Co. v. United States, Ct.Cl., 50 F.2d 299; Mills Novelty Co. v. United States, Ct.Cl., 50 F.2d 476; Edard J. Darby & Son v. Rothensies, 116 F.2d 268, opinion by the United States Circuit Court of Appeals for the Third Circuit, filed December 3, 1940; and Athletic Shoe Co. v. United States, D.C., 20 F.Supp. 825. The judgment of the District Court is affirmed.

 C09. Tax on Sporting Goods. There is hereby imposed upon the following articles, sold by the manufacturer * * *, a tax equivalent to 10 per centum of the price for which so sold: Tennis rackets, tennis racket frames and strings, nets, racket covers and presses, skates, snowshoes, skis, toboggans, canoe paddles, polo mallets, baseball bats, gloves, masks, protectors, shoes and uniforms, football helmets, harness and uniforms, basket ball goals and uniforms, golf bags and clubs, lacrosse sticks, balls of all kinds, including baseballs, footballs, tennis, golf, lacrosse, billiard and pool balls, fishing rods and reels, billiard and pool tables, chess and checker boax-ds and pieces, dice, games and parts of games (except playing cards and children’s toys and games); and all similar articles commonly or commercially known as sporting goods.”
The pertinent provisions of Treasury Regulations 46, promulgated under the Revenue Act of 1932, follow:
Art. 53. Scope of Tax. — “The tax attaches to sales by the manufacturer of the articles enumerated in Section 609 as well as to all similar articles commonly or commercially known as sporting goods, games, and parts of games * * *. The term ‘sporting goods’ includes all articles of the same genex-al character as those specifically named, the purpose of which is primarily for use either indoors or outdoors in connection with a game or sport. The term ‘game’ includes games of skill or chance and every contx-ivance * * * designed to furnish sport, x-e-creation, or amusement.”
Art. 54. Sporting Goods. — “The following list, while not exhaustive, is illustx-ative of the type of articles subject to tax as sporting goods: all paraphernalia, equipment and uniforms specially designed for or commonly used in * * * bowling.”

 The tax attached to sales by manufacturers of “tennis rackets, golf clubs, baseball bats, lacrosse sticks, balls of all kinds, including baseballs, footballs, tennis, golf, lacrosse, billiard and pool balls, fishing rods and reels, billiard and pool tables, chess and checker boards and pieces, dice, games and parts of games, except playing cards and children’s toys and games.”

 The 1918 tax clause contains the same language as found in the 1932 tax clause (see footnote 1) except that in the latter the words “tennis racket frames and strings” were inserted, the words “and cushions” were deleted, and the word “uniforms” was substituted for the word “goals.”